UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YULIANA CAMACHO,<br><br>    Plaintiff,<br><br>v.<br><br>ALLIANT CREDIT UNION,<br><br>    Defendant. | Case No. 22-cv-01690-BLF<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Re: ECF No. 35] |

In this case, Plaintiff Yuliana Camacho challenges Defendant Alliant Credit Union's ("Alliant") denial of her loan application on the basis of her immigration status or alienage. She alleges that Alliant denied her loan application upon learning that she was a recipient of Deferred Action for Childhood Arrivals ("DACA"). Plaintiff seeks to represent a nationwide class as well as a California subclass.

Now before the Court is Alliant's motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 35 ("MTD"); *see also* ECF No. 42 ("Reply"). Plaintiff opposes the motion. ECF No. 40 ("Opp."). The Court held a hearing on the motion on December 15, 2022. *See* ECF No. 45. For the following reasons, Alliant's motion to dismiss the Complaint is DENIED.

**I.   BACKGROUND**

As alleged in the Complaint and accepted as true for the purposes of this motion, Defendant Alliant Credit Union ("Alliant") is a member-owned credit union that offers a range of financial and credit products, including retail banking services, retirement and life insurance products, personal loans, auto loans, credit cards, and home mortgages. ECF No. 1 ("Compl.") ¶¶ 9, 11. Plaintiff Yuliana Camacho is a resident of Salinas, California, and she has been a DACA

recipient since 2012. *Id.* ¶¶ 7, 13. As a DACA recipient, Camacho has continuously possessed an employment authorization card and Social Security Number. *Id.*

In or around October 2021, Camacho ordered a Tesla online, and she paid a non-refundable $250 order fee to reserve the vehicle while her financing was pending. Compl. ¶ 15. A Tesla representative recommended she apply for financing from Alliant because other Tesla customers had successfully acquired loans from them. *Id.* In or around October 2021, Camacho applied for a $43,442.96 automobile-purchase loan from Alliant through its online portal. *Id.* ¶ 16. She submitted her Social Security Number as part of the application and listed her husband, a U.S. citizen, as a co-signer, and her application was pre-approved by Alliant. *Id.*

Alliant then requested that Camacho upload either I-797 and I-94 forms (if she was a visa holder), a permanent resident card (if she was a permanent resident), or a naturalization certificate (if she was a naturalized citizen). Compl. ¶ 17. Camacho informed an Alliant representative through the messaging portal that she was neither a visa holder, permanent resident, nor naturalized citizen, but instead was a DACA recipient. *Id.* ¶ 18. The Alliant representative stated that Alliant does "not lend on DACA status" and recommended that Camacho's husband submit an application solely in his own name. *Id.* Camacho then received an "Adverse Action Notice" from Alliant, and the section for "Principal Reason(s) for Credit Denial, Termination, or Other Action Taken" had a box checked indicating that her application was denied solely based on her "Residency Status." *Id.* ¶ 19.

Camacho filed this lawsuit on March 16, 2022. *See* Compl. She alleges two causes of action: (1) alienage discrimination under 42 U.S.C. § 1981 ("Section 1981") and (2) violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* ("Unruh Act"). Compl. ¶¶ 41-58. She brings the first cause of action on behalf of a National Class composed of "[a]ll persons who resided in the United States at the relevant time they applied for or attempted to apply for a financial product from Alliant but were denied full and equal consideration by Alliant on the basis of alienage." *Id.* ¶ 26, 42. She brings the second cause of action on behalf of a California Subclass composed of "[a]ll persons who resided in California at the relevant time they applied for or attempted to apply for a financial product from Alliant but were denied full and equal

1  consideration by Alliant on the basis of their immigration status." *Id.* ¶ 27, 52.  Alliant now seeks
2  to dismiss the Complaint.  *See* MTD.

## II.  LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III.  DISCUSSION

Alliant argues that Plaintiff's claims must be dismissed because (1) Plaintiff's Section 1981 and Unruh Act claims are displaced or preempted by the Equal Credit Opportunity Act ("ECOA") and its implementing regulations ("Regulation B"); (2) Plaintiff fails to state a claim for alienage discrimination under Section 1981; and (3) Plaintiff fails to state a claim under the Unruh Act.  MTD at 4-5.  The Court will address each argument in turn.

### A.  The ECOA and Regulation B

Alliant argues that the ECOA and Regulation B allow creditors such as Alliant to consider

3

immigration and residency status in creditworthiness and repayment analyses. MTD at 6-9. Alliant further argues that the ECOA and Regulation B displace Plaintiff's Section 1981 claim and preempt Plaintiff's Unruh Act claim. *Id.* at 9-14.

The ECOA provides that it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). Regulation B provides that "[a] creditor may inquire about permanent residency and immigration status of an applicant or any other person in connection with a credit transaction." 12 C.F.R. § 1002.5(e). It also states that "[a] creditor may consider [an] applicant's immigration status or status as a permanent resident of the United States, and any additional information that may be necessary to ascertain the creditor's rights and remedies regarding repayment." 12 C.F.R. § 1002.6(b)(7).

### i. The ECOA and Section 1981

Alliant first argues that the ECOA and Regulation B displace a Section 1981 action for credit discrimination. MTD at 9-12. Alliant asserts that because the "ECOA is a more recently promulgated statute that specifically governs the precise harm Plaintiff allegedly suffered—credit discrimination—her claim under the older and more general terms of Section 1981 must also fail as a matter of law." *Id.* at 9-10. It argues that Camacho is trying to circumvent Congress's choice to not prohibit discrimination on the basis of alienage or immigration or residency status in the ECOA by bringing a claim under "the older and more nebulous text of Section 1981." *Id.* at 11.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 prohibits discrimination on the basis of alienage. *Sagana v. Tenorio*, 384 F.3d 731, 738-39 (9th Cir. 2004). Section 1981 and the ECOA thus both address discrimination in the realm of contract. Section 1981 is a general statute that "prohibits discrimination in the making of any type of contract," while the ECOA is a more specific statute that "prohibits discrimination in the making of a specific type of contract, namely, a contract for credit." *Perez v. Wells Fargo & Co.*, No. 17-cv-00454-MMC, 2017 WL 3314797, at *3 (N.D. Cal. Aug. 3, 2017). "[T]he ECOA does not address discrimination on the basis of

4

alienage or immigration status." *Juarez v. Soc. Fin., Inc.*, No. 20-cv-03386-HSG, 2021 WL 1375868, at *7 (N.D. Cal. Apr. 12, 2021).

The Court agrees with other courts in this district that the ECOA does not displace Plaintiff's claim under Section 1981. *See Juarez*, 2021 WL 1375868, at *7; *Perez*, 2017 WL 3314797, at *2-4; *see also Maystrenko v. Wells Fargo, N.A.*, No. 21-cv-00133-JD, 2021 WL 5232221, at *4 (N.D. Cal. Nov. 10, 2021). The Supreme Court has held that, recognizing the "cardinal principle of construction that repeals by implication are not favored[, w]hen there are two acts upon the same subject, the rule is to give effect to both if possible." *United States v. Borden Co.*, 308 U.S. 188, 198 (1939) (collecting cases). As was held in *Perez* and followed in *Juarez*, "the ECOA and § 1981 'can be read to give effect to both, in that § 1981 precludes a creditor from discriminating on the basis of race or alienage, whereas the ECOA precludes a creditor from discriminating on additional grounds, such as religion and national origin.'" *Juarez*, 2021 WL 1375868, at *7 (quoting *Perez*, 2017 WL 3314797, at *3). It is possible for a creditor to comply with both the ECOA and Section 1981 "by not discriminating on the basis of any of the categories listed in the two statutes." *Perez*, 2017 WL 3314797, at *3.

Further, the Court considers the legislative history of the ECOA, looking specifically at whether Congress intended the ECOA to repeal Section 1981 by implication. As explained by the Ninth Circuit, the purpose of the ECOA as enacted in 1974 was "to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Brothers v. First Leasing*, 724 F.2d 789, 793-94 (9th Cir. 1984) (quoting *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982)). Congress amended the ECOA in 1976 and "reaffirmed the goal of antidiscrimination in credit . . . by adding race, color, religion, national origin, and age to sex and marital status as characteristics that may not be considered in deciding whether to extend credit." *Id.* at 794. The legislative history provides no basis for the Court to find that Congress, in enacting the ECOA to expand protections against credit discrimination, intended to remove the protections of Section 1981 for individuals who were discriminated against on the basis of alienage. *See Perez*, 2017 WL 3314797, at *4; *Juarez*, 2021 WL 1375868, at *7.

5

And Alliant's argument as to Regulation B fares no better. As with the ECOA, the Court finds that it is possible to give effect to both Regulation B and Section 1981, as a creditor can comply with both. *See Borden Co.*, 308 U.S. at 198. Further, Regulation B does not allow a creditor to decline credit *solely* on the basis of residency or immigration status. *Juarez*, 2021 WL 1375868, at *7 (citing *Perez*, 2017 WL 3314797, at *2 n.4). And that is what Camacho alleges occurred here. *See* Compl. ¶¶ 18-19.

The Court therefore DENIES the motion to dismiss the Section 1981 claim as displaced by the ECOA and Regulation B.

### ii. The ECOA and the Unruh Act

Alliant next argues that the ECOA preempts the Unruh Act under both state and federal preemption principles. MTD at 12-14. It asserts that Plaintiff's claim under the Unruh Act must be dismissed because it "unavoidably contradicts ECOA's national policy," as federal law allows a creditor to consider immigration or residency status, but the Unruh Act prohibits this conduct, according to Plaintiff. *Id.* at 13.

For the reasons discussed above, the Court declines to find that the Unruh Act claim is preempted by the ECOA. *See Perez*, 2017 WL 3314797, at *5 (declining to dismiss the Unruh Act claim as in conflict with the ECOA, finding "Congress, by enacting the ECOA, did not intend to authorize creditors to discriminate on the basis of alienage or otherwise to remove protections against discrimination afforded under other statutes"). The two statutes are not in unavoidable conflict. *See Borden Co.*, 308 U.S. at 198. As with Section 1981, a creditor could comply with both the ECOA and the Unruh Act by not discriminating on the basis of any of the categories identified in either statute. And the Regulation B arguments again fail, for the same reasons. Regulation B may allow a creditor to inquire about or consider immigration status, but it does not allow a creditor to deny credit solely on that basis.

The Court therefore DENIES the motion to dismiss the Unruh Act claim as preempted by the ECOA and Regulation B.

### B. Section 1981

Alliant next argues that the Court should dismiss Camacho's Section 1981 claim for failure

to state a claim. MTD at 15-19. Alliant asserts that Section 1981 prohibits discrimination on the basis of alienage, but not immigration or residency status. *Id.* at 15. And, the argument goes, Camacho only alleges discrimination on the basis of immigration or residency status, and therefore she cannot state a claim under Section 1981. *Id.* at 15-17.

As stated above, Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute's protections "extend to aliens as well as to citizens." *Graham v. Richardson*, 403 U.S. 365, 377 (1971) (citing *Takahashi v. Fish & Game Comm'n*, 344 U.S. 410, 419 n.7 (1948)). As the Ninth Circuit has recognized, "the word 'citizen' attests that a person cannot face disadvantage in the activities protected by § 1981 solely because of his or her alien status." *Sagana*, 384 F.3d at 738.

Alliant argues that Camacho does not plead that she was denied the loan solely on the basis of her non-citizenship, and it notes her allegations that Alliant asked for documentation that she was a visa holder, permanent resident, or naturalized citizen, which suggest Alliant does provide credit to some non-citizens. MTD at 17. But the fact that Alliant "discriminates against only a subset of lawfully present immigrants does not somehow insulate its policies from scrutiny under § 1981." *Juarez*, 2021 WL 1375868, at *6; *see also Maystrenko*, 2021 WL 5232221, at *3 ("Discrimination 'within the class of aliens' is unlawful discrimination; the salient point is that a policy 'is directed aliens and that only aliens are harmed by it.'" (quoting *Nyquist v. Mauclet*, 432 U.S. 1, 8-9 (1977))); *Rodriguez v. Proctor & Gamble Co.*, 465 F. Supp. 3d 1301, 1322 (S.D. Fla. 2020) ("[C]ourts have found similar policies that subject only certain subclasses of immigrants to adverse treatment to constitute alienage discrimination.").

Alliant points to several cases in which, it argues, courts have held that citizenship and alienage are distinct traits from immigration or residency status for purposes of Section 1981. MTD at 15-16. But many of these cases addressed motions for summary judgment, and not motions to dismiss. *See Vaughn v. City of New York*, No. 06-CV-6547 (ILG), 2010 WL 2076926, at *10 (E.D.N.Y. May 24, 2010); *de Reyes v. Waples Mobile Home Park Ltd. P'ship*, 251 F. Supp. 3d 1006, 1021-22 (E.D. Va. 2017); *Talwar v. Staten Island Univ. Hosp.*, No. 12-CV-0033

7

(CBA)(JMA), 2014 WL 5784626, at *7 (E.D.N.Y. Mar. 31, 2014); *accord Ruiz v. Zoom Video Commc'ns Inc.*, No. C21-1379-FSM-SKV, 2022 WL 770293, at *5 (W.D. Wash. Feb. 1, 2022) (distinguishing *Vaughn, Talwar*, and *de Reyes* on the basis that they were decided on motions for summary judgment and "considered different and factually developed claims"). Further, the Court finds persuasive Camacho's argument that additional factual development is necessary to determine the exact nature of Alliant's discrimination. *See* Opp. at 14-15.

The Court DENIES Alliant's motion to dismiss the Section 1981 claim for failure to state a claim.

### C.     Unruh Act

Alliant asserts that the Court should dismiss Camacho's Unruh Act claim for failure to state a claim. MTD at 19-21. It argues that the Unruh Act only prohibits arbitrary discrimination, and differential treatment of one of the protected categories does not constitute a violation if the differential treatment is justified by public policy. *Id.* at 19. Defendant argues that differentiating on the basis of immigration status is authorized by federal law and is not arbitrary because immigration status "bear[s] on the creditor's ability to secure repayment." *Id.* at 20.

The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). It further provides that "[n]o business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in [California] on account of any characteristic" identified above. Cal. Civ. Code § 51.5(a).

The Unruh Act protects against "discrimination on arbitrary grounds." *Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162, 172 (2015) (quoting *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167 (2007)); *see also Howe v. Bank of Am. N.A.*, 179 Cal. App. 4th 1443, 1450 (2009) ("[T]he objective of the Act is to prohibit businesses from engaging in unreasonable,

8

arbitrary, or invidious discrimination." (quoting *Pizarro v. Lamb's Players Theatre*, 135 Cal. App. 4th 1171, 1174 (2006))). Courts have found differential treatment of members of a protected category allowable under the Unruh Act "where a strong public policy exists in favor of such treatment." *Sargoy v. Resol. Tr. Corp.*, 8 Cal. App. 4th 1039, 1043 (1992) (collecting cases); *see also Koire v. Metro Car Wash*, 40 Cal. 3d 24, 38 (1985) ("There may also be instance where public policy warrants differential treatment . . . .").

Alliant first argues that legislative enactments supporting differential treatment are sufficient to show public policy exists in favor of the differential treatment, and that Regulation B is such an enactment. MTD at 20. Alliant further argues that its policy is not arbitrary because immigration and residency status affect whether it will be able to secure repayment from a customer. *Id.* at 20-21. But the Court declines to make such a determination at this early stage of the case. The Court cannot find, at this point or on this record, that Alliant's categorical ban on the basis of immigration status is supported by public policy such that, as a matter of law, it does not constitute a violation of the Unruh Act. *See* Opp. at 17-18; *accord Perez*, 2017 WL 3314797, at *6 ("At this stage of the proceedings, the record before the Court is insufficient to support a finding, as a matter of law, that public policy considerations warrant a creditor's distinguishing between a permanent resident who has a citizen cosigner and a non-permanent resident who has a citizen cosigner.").

The Court DENIES the motion to dismiss the Unruh Act claim for failure to state a claim.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion to dismiss the Complaint is DENIED.

Dated: January 10, 2023

_____
BETH LABSON FREEMAN
United States District Judge