Thomas A. Saenz (Cal. Bar No. 159430)
Luis L. Lozada (Cal. Bar No. 344357)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
          llozada@maldef.org

*Attorneys for Plaintiffs*
*and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YULIANA CAMACHO, an individual, and JOSHUA SOTO LOPEZ, an individual, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>  vs.<br><br>ALLIANT CREDIT UNION,<br><br>                  Defendant. | Case No.: 5:22-cv-01690-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Judge: Beth Labson Freeman<br>Hearing Date: August 15, 2024<br>Hearing Time: 9:00 a.m.<br>Courtroom: Videoconference |

## NOTICE OF UNOPPOSED MOTION

PLEASE TAKE NOTICE that on August 15, 2024 at 9:00 a.m., or as soon thereafter as the matter may be heard, via videoconference, Plaintiffs Yuliana Camacho and Joshua Soto Lopez (together, "Plaintiffs"), individually and as class representatives on behalf of the Class will, and hereby do, move this Court for an order: (1) granting, under Rule 23(e) of the Federal Rules of Civil Procedure, final approval of the Parties' proposed class action settlement (the "Settlement"), and entry of judgment in accordance with the Settlement; and (2) granting, under Rule 23(a) and 23(b)(3), final class certification of the Settlement Class preliminarily certified in the Court's April 15, 2024 Preliminary Approval Order.  Dkt. 61.

Plaintiffs make this motion on the grounds that the Settlement is fair, adequate, and reasonable, was achieved through good faith, arms-length negotiations, and has drawn a highly favorable response from the Class, as described in the attached memorandum.  The Settlement Agreement provides two important forms of relief for Class Members: (1) corrective action where Alliant will no longer deny applications for Consumer Credit Products (as defined in the Settlement Agreement) solely on the basis of the applicant's immigration or residency status, and Alliant has changed its underwriting policies to allow individuals to be evaluated for Consumer Credit Products on the same terms as U.S. citizens (subject to applicable federal and state laws and regulations); and (2) a Settlement Fund of $86,750 to compensate Class Members.

This Motion is noticed to be heard with Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Costs, and Service Awards.  Dkt. 66.  The Court preliminarily approved the Settlement Agreement on April 15, 2024.  Dkt. 61.  Since then, Notice was provided to the Class Members.  No Class Members have opted-out of the Settlement, and no Class Members have objected to the Settlement.

1
2
3
4
5
6
7
8

This Motion is based on this notice of motion; the memorandum in support of the unopposed motion; the Declaration of Thomas A. Saenz ("Saenz Decl."); the Declaration of Luis L. Lozada ("Lozada Decl."); the Declaration of Melissa E. Baldwin for RG2 Claims Administration LLC ("RG2 Decl."); the Court's record of this action; all matters of which the Court may take notice; and any oral evidence presented at the final approval hearing on the motion.


Dated: July 5, 2024

Respectfully submitted,

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*/s/ Luis L. Lozada*
Luis L. Lozada
Thomas A. Saenz
**MEXICAN AMERICAN LEGAL**
**DEFENSE AND EDUCATIONAL FUND**
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
          llozada@maldef.org

*Attorneys for Plaintiffs*
*and the Proposed Class*

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**          CASE NO. 5:22-cv-01690-BLF

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION……………………………………………….……………..1-2

II.    RELEVANT BACKGROUND………………………………………………..2-7

    A.  Settlement Negotiations and Preliminary Approval…………………………….3-4

    B.  Settlement Overview………………………………………………………….4-5

        *1. Corrective Action…………………………………………………………..4*

        *2. Monetary Relief…………………………………………………………4-5*

    C.  The Settlement Class……………………………………………………5-6

    D.  Notice and Claims Process……………………………………………………6-7

    E.  CAFA Notice Requirements Were Satisfied……………………………………7

III.    ARGUMENT…………………………………………………………….7-18

    A.  The Best Practicable Notice of Settlement Has Been Provided to the Class………...7-9

    B.  Final Certification of the Rule 23 Class is Proper…………………………………9

    C.  Final Approval of the Class Action Settlement Should Be Granted Because the

        Settlement is Fair, Adequate, and Reasonable Under Rule 23………………………9-18

        *1. Plaintiffs Faced Substantial Obstacles to Recovery………………………………...11*

        *2. The Risk, Expense, Complexity, and Delay of Further Litigation Support Final*

        *Approval……………………………………………………………………11-12*

        *3. Plaintiffs Faced a Risk that the Court Would Deny Class Certification………...12-13*

        *4. The Settlement Amount is Appropriate………………………………………13-14*

        *5. The Extent of Discovery Supports Settlement………………………………………15*

        *6. Class Counsel's Experience and Views Support Approval………………….......15-16*

        *7. Class Members Have Reacted Positively to the Settlement…………………….......16*

        *8. The Requirements for Approval under Rule 23(e)(2) Are Met…………………16-18*

IV.    CONCLUSION……………………………………………….…………........18

1

## TABLE OF AUTHORITIES

2

Cases                                                                                                    Page(s)

3

*Bert v. AK Steel Corp.*,
   2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ........................................................................17

4

*Betancourt v. Advantage Human Resourcing, Inc.*,
   2016 WL 344532 (N.D. Cal. Jan. 28, 2016) .....................................................................10, 13

5

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .........................................................................................14

6

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ...................................................................................................7

7

*Chun-Hoon v. McKee Foods Corps.*,
   716 F.Supp.2d 848 (N.D. Cal. 2010) ......................................................................................10

8

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .....................................................................................................7

9

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .............................................................................................8, 11

10

*Cotter v. Lyft, Inc.*,
   176 F.Supp.3d 930 (N.D. Cal. 2016) .................................................................................10, 12

11

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ...................................................................................................................7

12

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ................................................................................................14

13

14

*Fernandez v. Victoria Secret Store*, LLC,
   2008 WL 8150856 (C.D. Cal. July 21, 2008) ..........................................................................16

15

*Ford v. CEC Entm't Inc.*,
   2015 WL 11439033 (S.D. Cal. Dec. 14, 2015) ..........................................................................8

16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................................9, 10, 15

17

*In re Cendant Litig.*,
   264 F.3d 201 (3rd Cir. 2001) ...................................................................................................11

18

*In re Lorazepam*,
   205 F.R.D. 369 (D.D.C. 2002) ................................................................................................16

19

*In re Mego Fin. Corp.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................................................11, 14

20

21

*In re Omnivision Techs., Inc.*,
   559 F.Supp.2d 1036 (N.D. Cal. 2008) ......................................................................................9

22

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .....................................................................................................14

23

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) ................................................................................................11

24

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .................................................................................................14

25

*Lopez-Valenzuela v. Maricopa County*,
   2015 WL 12811366 (D. Ariz. June 25, 2015) .........................................................................16

26

27

28

- iv -

*Ma v. Covidien Holding, Inc.*,
   2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ............................................................. 13
*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ................................................................................. 7
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... Passim
*Officers for Justices v. Civil Serv. Com'n of City & Cty. of S.F.*,
   668 F.2d 615 (9th Cir. 1982) ......................................................................... 12, 14
*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................. 10, 14, 17
*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ............................................................................ 10
*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................. 9
*Stovall-Gusman v. W.W. Granger, Inc.*,
   2015 WL 3776765 (N.D. Cal. June 17, 2015) ................................................... 13
*Tumampos v. Cathay Pac. Airways LTD.*,
   2018 WL 5603702 (N.D. Cal. Sept. 21, 2018) ................................................... 11
*United States v. Armour & Co.*,
   402 U.S. 673 (1971) ............................................................................................ 12
*Valdez v. Neil Jones Food Co.*,
   2016 WL 4247911 (E.D. Cal. Aug. 10, 2016) ...................................................... 9
*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ........................................................................ 8, 11

Statutes

28 U.S.C. § 1715 ..................................................................................................... 6

28 U.S.C. § 1715(d) ................................................................................................ 7

42 U.S.C. § 1981 ............................................................................................... 1, 13

Cal. Civ. Code § 52 ................................................................................................. 1

Rules

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 7

Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi) ........................................................................ 7

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(A) .................................................................................. 16

Fed. R. Civ. P. 23(e)(2)(B) .................................................................................. 16

- v -

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................17

Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv) ......................................................................................9

Rule 23 ..................................................................................................................................8

Rule 23(a) ..............................................................................................................................9

Rule 23(b)(3) .........................................................................................................................8

Rule 23(e)(2) ...................................................................................................................9, 16

Other Authorities

4 A. Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002) ................9

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL

## I.    INTRODUCTION

Plaintiffs Yuliana Camacho and Joshua Soto Lopez ("Plaintiffs"), individually and as class representatives on behalf of the Class, respectfully request final approval of this Settlement of the claims brought against Defendant Alliant Credit Union ("Alliant") by a class of individuals who were previously ineligible for credit products because of their lack of U.S. citizenship and/or immigration status.  Plaintiffs' First Amended Complaint alleges that Alliant's prior policies violated 42 U.S.C. § 1981 ("Section 1981") and the California Unruh Act, Cal. Civ. Code § 52 ("Unruh Act").  Dkt. 64.  Plaintiffs filed this case so that they and others similarly situated would have the opportunity to apply and be considered for Consumer Credit Products (as defined in the Settlement Agreement) based on considerations applicable to all other applicants, not solely based on their citizenship and/or immigration status.

This Settlement, for which Plaintiffs respectfully seek final approval, addresses the precise policy underlying Plaintiffs' claims of discrimination.  Alliant has agreed not to deny applicants Consumer Credit Products solely on the basis of their lack of U.S. citizenship and/or immigration status, and Alliant has changed its underwriting policies to allow individuals to be evaluated for loans and other credit products on the same terms as U.S. citizens (subject to applicable federal and state laws and regulations), fully eliminating the harm challenged by the lawsuit for future applicants.  The Settlement also provides for monetary relief in the form of a Settlement Fund in the amount of $86,750 for Class Members.  Subject to Court Approval, Alliant also has agreed to pay attorneys' fees, costs of litigation incurred by Plaintiffs' counsel, and service awards for Plaintiffs.  Alliant has agreed not to oppose an application for attorneys' fees and costs up to $50,000; and a service award of up to $5,000.  Plaintiffs seek approval for an award of attorneys' fees and costs in the amount of $50,000; $4,500 service award to Plaintiff Camacho; and $500

service award to Plaintiff Soto Lopez.  Alliant has also agreed to pay the cost of settlement administration, which will be up to $11,000.  *See* Dkt. 56-2, Settlement Agreement and Release ("SA") § 4(e).

The Settlement, which the Court preliminarily approved on April 15, 2024 was reached after more than a period of several months of extensive negotiation, and has received a positive response from the Class.  Starting May 20, 2024, the Settlement Administrator sent notices to Class Members.  RG2 Decl. ¶ 7.  After conducting a skip-trace, none of the notices remain undeliverable. *Id.* at ¶ 8.  No Class Members have submitted an exclusion or objection.  *Id.* at ¶¶ 12, 13.

Final approval of this Settlement should be granted because the Settlement provides monetary relief to Class Members and is the product of diligent efforts of Class Counsel to obtain the best possible result for the Class.  The Settlement is fair, adequate, and reasonable, and provides excellent relief to the Class.  It is also significant that there are no objections to the settlement.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").  Therefore, Plaintiffs respectfully request that the Court confirm as final the certification of the Class, and enter an order granting final approval of the Settlement; award of attorneys' fees and costs; settlement administration costs; and service awards.

## II.    RELEVANT BACKGROUND

As described in Plaintiff's Unopposed Motion for Preliminary Settlement Approval [dkt. 56], and Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards [dkt. 66], Class counsel has dedicated time and resources to this contested litigation and has engaged in good

faith, arms-length settlement negotiations, resulting in significant relief to the Class.[1]  *See* Dkt. 56-1, Declaration of Thomas A. Saenz ("Saenz Decl.") ¶ 13; Dkt. 66-1, Declaration of Luis L. Lozada ("Lozada Decl.") ¶¶ 15–20.  The Settlement achieved by Class Counsel is procedurally sound: (a) having been reached after more than several months of good faith, arms-length negotiation; (b) with no parallel litigation that could give rise to concerns regarding the settlement; (c) notice of settlement; and (d) followed by months of further negotiations between the Parties to finalize the Settlement Agreement, and request for attorneys' fees and costs.  Lozada Decl. ¶¶ 18–28.

**A.  Settlement Negotiations and Preliminary Approval**

Over a period of several months, the Parties engaged in negotiations and exchanged informal discovery.  The Parties exchanged multiple offers and counter-offers over this period, during which they reached a tentative agreement on the material terms of a settlement, and thereafter the Parties filed a Joint Status Report and Notice of Settlement and vacated all dates and deadlines pending the motion for preliminary approval.  Dkt. 52.

Following the notice of settlement, the Parties spent the next several months diligently negotiating the terms of the Settlement Agreement and accompanying notice documents.  Saenz Decl. ¶ 12–14; Lozada Decl. ¶¶ 18–28.  Alliant agreed not to oppose an application for attorneys' fees and costs up to $50,000.  Fees and costs will not be paid out of the Settlement Fund.   Saenz Decl. ¶ 19; Lozada Decl. ¶ 34.

To effectuate the Settlement, Class Counsel participated in selecting RG2 as settlement administrator.  Class Counsel then participated in drafting and filed the preliminary approval brief,

---

[1] A full discussion of the relevant factual and procedural background is set forth in Plaintiff's Unopposed Motion for Preliminary Approval [dkt. 56], and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Costs, and Service Awards [dkt. 66].

- 3 -

and the accompanying notice documents: long- and short-form notices, and Spanish and English instructions.  Dkts. 56, 56-1 to 56-4.

On April 11, 2024, the Court held a hearing on the Unopposed Motion for Preliminary Approval.  At the hearing, the Court directed Class Counsel to file amended Notice documents, amended proposed order, and an amended complaint identifying a National Class representative in this action.  On April 15, 2024, Class Counsel filed the requested amended Notice documents and amended proposed order.  Dkts. 59, 60.  The Court granted preliminary approval on April 15, 2024.  Dkt. 61.  On May 6, 2024, Class Counsel filed the requested First Amended Complaint identifying Soto Lopez as a named plaintiff and National Class representative.  Dkt. 64.

**B.  Settlement Overview**

*1.  Corrective action*

The most significant aspect of the Settlement that Plaintiffs were able to achieve is that Alliant has modified its policies and will no longer deny applicants Consumer Credit Products on the basis of their immigration status, and applicants will be evaluated on the same terms as U.S. citizen applicants (the "Corrective Action").  SA § 11.  By updating these requirements, this policy change eliminates the precise harm that Plaintiffs challenged through this suit.  Alliant is a major credit union that serves customers across the country, Plaintiffs hope and expect that these changes will also have a broader positive impact in the United States.

*2.  Monetary relief*

In addition to Corrective Action, Alliant has agreed to create a Settlement Fund of $86,750 that will cover individual payments to the 95 Class Members identified; and (b) subject to Court approval, pay Service Awards in the total amount of $5,000.  SA §§ 1(w) and 10(b).  In addition to the Settlement Fund, Alliant has further agreed to pay Class Counsel's attorneys' fees and costs, subject to Court approval.  Plaintiffs have applied for an award of fees and costs in the amount of

- 4 -

1    $50,000.  Plaintiffs have applied for a service award in the amount of $5,000 and seek approval

2    for an order permitting Alliant to pay up to $11,000 in settlement administration expenses to RG2.

3    *See* SA § 10; Dkt. 66.

4          The Notice plan was reasonably calculated to give notice to Class Members and meets the

5    requirements of due process.  On May 20, 2024, RG2 sent notices to the 95 Class Members.  RG2

6    Decl. ¶ 7.  Seven of the mailed notices were returned as undeliverable.  *Id.* at ¶ 8.  RG2 conducted

7    a skip-trace and mailed the seven notices to the updated addresses.  *Id.*  None of the notices remain

8    undeliverable.  *Id.*  The deadline to opt-out or object to the Settlement was June 19, 2024.  *Id.* at ¶

9    11.  RG2 has not received any exclusion or objection.  *Id.* at ¶¶ 12, 13.  Each California Class

10   Member will receive approximately $2,500 per denial, and each National Class Member will

11   receive approximately $250 per denial.  SA § 1(o).

12

13        **C.  The Settlement Class**

14        On  April  15,  2024,  the  Court  preliminarily  approved  certification  of  the  proposed

15   Settlement Class, defined as follows:

16

17   • "California Class Member(s)" shall mean the 28 individuals who, according to
       Defendant's records, applied for a Consumer Credit Product with Defendant
18     from March 16, 2020 through July 31, 2023; were legally residing in the State
       of California at the time they applied; were denied such loan due to their
19     immigration or residency status at the time they applied; and whose valid and
       unexpired immigration status at the time they applied was one of the following:
20     (1) DACA; (2) H4 (and applying without the corresponding H1-B, H-2B, or H3
       visa holder to which it is dependent); or (3) asylum applicant.
21

22   • "National Class Member(s)" shall mean the 67 individuals who, according to
       Defendant's records, applied for a Consumer Credit Product with Defendant
23     from March 16, 2020 through July 31, 2023; were residing or residing as a
       matter of law in any state of the United States other than California at the time
24     they applied; were denied such loan due to their immigration or residency status
       at the time they applied; and whose valid and unexpired immigration status at
25     the time they applied was one of the following: (1) DACA; (2) H4 (and applying
       without  the  corresponding  H1-B,  H-2B,  or  H3  visa  holder  to  which  it  is
26     dependent); or (3) asylum applicant.
27

28
                                          - 5 -

SA §§ 1(d) and (s).  Consistent with the Court's order granting preliminary certification, Plaintiffs seek final certification of the Class.

### D.  Notice and Individual Payments

The Parties have followed the Court-approved notice plan, as set forth in the Settlement Agreement, and the Court's Preliminary Approval Order entered on April 15, 2024.  *See* SA § 4; dkt. 61.

On November 2, 2023, Alliant sent RG2 the Settlement Class List consisting of 95 individuals.  RG2 Decl. ¶ 5.  The list contained each Class Member's name, contact information, social security numbers, and the state of residence at the time of their application.  *Id.*  RG2 reviewed the records and ran the mailing file through the U.S. Postal Service's National Change of Address Database.  *Id.* at ¶ 7.

Beginning on May 20, 2024, RG2 mailed the Court-approved Notice Packet to all 95 Class Members via USPS first-class mail.  RG2 Decl. ¶ 7.  The Notice Packet consisted of the Notice, and English and Spanish instructions.  *Id.*  Of these mailed Notice Packets, seven were returned as undeliverable without a forwarding address.  *Id.* at ¶ 8.  RG2 performed a skip-trace and identified seven updated addresses.  *Id.*  RG2 re-mailed Notices to the seven Class Members under skip-tracing.  *Id.*  None of the seven re-mailed Notices have been returned by USPS.  *Id.*  A total of zero Notices remain undeliverable.  *Id.*  100% of Class Members received the Notice Packet.

Consistent with best practices, RG2 maintained a website containing downloadable versions of the Long- and Short-Form Notices in English and Spanish, Settlement Agreement, Preliminary Approval Order, and brief summary of the Settlement.  RG2 Decl. ¶ 6.  The website has a "Contact Us" page which provides the mailing address, phone number and email address to contact RG2 and Class Counsel.  *Id.*  RG2 also created a toll-free number to speak with a live

- 6 -

bilingual operator. *Id.* at ¶ 9. Class Members may leave a message for RG2 to call them back through an automated Spanish recording. *Id.*

The Settlement does not require Class Members to submit a claim or take any action to collect the individual payments under the Settlement. *See* SA § 10. Within 10 days of the Effective Date, the Settlement Administrator will mail a check in the amount of $2,500 to each California Class Member and will mail a check in the amount of $250 to each National Class Member, and all checks must be cashed within 120 days after the Settlement Administrator issued the checks. *Id.* at §§ 1(n) and (x), 10(d).

RG2 sent Notices to Class Members starting May 20, 2024. RG2 Decl. ¶ 7. After conducting a skip-trace, none of the Notices have been returned as undeliverable. *Id.* at ¶ 8. The deadline for Class Members to opt-out or object to the Settlement was June 19, 2024. RG2 Decl. ¶ 11. No Class Members have opted-out of or objected to the Settlement. *Id.* at ¶¶ 12 and 13. The Effective Date is 30 days after the entry of the Final Approval Order. SA § 1(j).

### E.  CAFA Notice Requirements Were Satisfied

In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, RG2 served CAFA notices on the U.S. Attorney General and twenty-four State Attorney Generals of the applicable states on November 11, 2023. RG2 Decl. ¶ 4. The Final Approval Hearing, set for August 15, 2024 is being held more than 90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met. 28 U.S.C. § 1715(d).

## III.    ARGUMENT

### A.  The Best Practicable Notice of Settlement Has Been Provided to the Class

The notice here was the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and was provided "in a reasonable manner to all class members who would be

- 7 -

bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted). Notice mailed to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 157 (1974). "'[T]he rule does not insist on actual notice to all class members in all cases' and 'recognizes it might be impossible to identify some class members for purposes of actual notice.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "the time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).

As described above, the mailing of Notices to Class Members and the administration of the notice process ensured that the best notice practicable was provided to Class Members. The Notice List was developed from a database of Alliant applicants who were denied Consumer Credit Products. *See* RG2 Decl. ¶ 5. The Notice was easily understandable and available in English and Spanish, and included contact information of Class Counsel, the address for the settlement administration website, and instruction on how to access the settlement website.

The Parties and the Settlement Administrator have complied with the Court-approved notice plan, as set forth in the Settlement Agreement, and the Court's Preliminary Approval Order. *See* SA § 4; dkt. 61. Because Class Members have been given a full and fair opportunity to consider the terms of the proposed Settlement and make an informed decision on whether to participate, the Court should find that the notice was adequate and the best practicable. *See Ford v. CEC Entm't Inc.*, No. 14-CV-677, 2015 WL 11439033, at *3 (S.D. Cal. Dec. 14, 2015) (finding

- 8 -

1   notice standards satisfied when claims administrator provided notice in accordance with the

2   procedures previously approved by the court in its preliminary approval order).

3       **B.  Final Certification of the Rule 23 Class is Proper**

4           At the preliminary approval stage, the Court preliminarily certified the Settlement Class

5   under Rule 23(a) and 23(b)(3).  Dkt. 61.  The Court also preliminarily appointed Plaintiff Camacho

6   as Class Representative, and preliminarily appointed Plaintiff's counsel, MALDEF, as Class

7   Counsel.  *See id.* at 3.

8           For the reasons outlined – in Plaintiff's Unopposed Motion for Preliminary Approval, and

9

10  the Court's Preliminary Approval Order – the Class, Class Representatives, and Class Counsel

11  satisfy the requirements under Rule 23 for settlement purposes.  Dkts. 56, 61.  The Court's

12  preliminary certification decision should now be confirmed as final.

13      **C.  Final Approval of the Class Action Settlement Should Be Granted Because the**
        **Settlement is Fair, Adequate, and Reasonable Under Rule 23**
14

15          At the outset, public policy strongly favors the resolution of litigation through settlement.

16  This is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950

17  (9th Cir. 1976) (footnote omitted); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

18  (9th Cir. 1992) (the Ninth Circuit has a "strong judicial policy that favors settlement, particularly

19  where complex class action litigation is concerned"); *In re Omnivision Techs., Inc.*, 559 F.Supp.2d

20  1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy

21  favoring settlement, particularly in class action law suits.").  Indeed, "[i]n most situations, unless

22  the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

23  expensive litigation with uncertain results."  *Valdez v. Neil Jones Food Co.*, No. 1:13-cv-00519,

24  2016 WL 4247911, at *7 (E.D. Cal. Aug. 10, 2016) (quoting 4 A. Conte & H. Newberg, Newberg

25  on Class Actions, § 11:50 at 155 (4th ed. 2002)).

26

27

28                                              - 9 -

The touchstone for the final approval inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual components parts, that must be examined for overall fairness." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks and alternations omitted)).  Under Rule 23(e)(2), a court must consider "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms' length; (C) the relief provided for the class is adequate … [and] (D) the proposal treats class members equitably to each other."  In analyzing whether class relief is adequate, courts must consider the costs, risks, and delay of trial and appeal; the method of processing class member claims and distributing relief; the terms of any attorneys' fee awards; and any agreement made in connection with the settlement proposal.  Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv); 23(e)(3).

This standard overlaps with the requirements set forth in *Hanlon v. Chrysler Corp.* where courts balance the following factors in assessing a class action settlement proposal:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (same).  The inquiry required upon settlement is "heightened" where a case is settled prior to formal class certification.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019).  Here, a rigorous review of the Settlement confirm that it merits final approval, as evidenced by a consideration of the factors set forth in *Hanlon*.

### 1. Plaintiffs Faced Substantial Obstacles to Recovery

The Parties balanced "plaintiffs' expected recovery […] against the value of the settlement offer," taking into account "the relative strengths and weaknesses of the plaintiffs' case." *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 935 (N.D. Cal. 2016) (internal citation and quotation marks omitted). "Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-cv-01788, 2016 WL 344532, at *4 (N.D. Cal. Jan. 28, 2016) (quoting *Chun-Hoon v. McKee Foods Corps.*, 716 F.Supp.2d 848, 851 (N.D. Cal. 2010)).

Here, while Plaintiffs believe that they can prevail on all issues, to recover full damages and relief, they would have to certify a class, survive Alliant's anticipated motion against class certification, and prevail at trial. The risk here is significant because Plaintiffs' claims raised a relatively novel theory with numerous unsettled issues. In addition, Alliant may argue that it did not have a uniform policy of denying Consumer Credit Products to DACA recipients and other immigrants, argue that many members of the putative class may have been ineligible for Consumer Credit Products for reasons other than immigration or residency status, or argue that its underwriting policies are justified because of applicants' non-permanent U.S. resident status. In light of these obstacles, the Settlement offers excellent value to Class Members.

### 2. The Risk, Expense, Complexity, and Delay of Further Litigation Support Final Approval

The risk, expense, complexity and duration of continued litigation favor settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Courts consider "the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002) (quoting *In re Cendant Litig.*, 264 F.3d 201, 233 (3rd Cir. 2001)). In most cases, "unless the settlement is clearly inadequate, its acceptance and approval

- 11 -

are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526. The Ninth Circuit has made clear that settlement is encouraged in class actions, where possible: "there is an overriding public interest in settling and quieting litigation […] particularly […] in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense." *Van Bronkhorst*, 529 F.2d at 950.

Here, absent settlement, final resolution of this case would not occur until years in the future, and would require significant expenditure of resources. Delay would increase the number of Class Members who would be untraceable. Settlement saves Class Members from the significant risk of no recovery, the cost of individual litigation, and the delay inherent in further litigation and possible appeals. Plaintiffs' claims in this action are highly complex, both procedurally and substantively. Settling Class Members' claims saves the Parties from completing briefing on class certification and motion practice, as well as going to trial. For these reasons, the law favors settlements, especially when complex class litigation is concerned. *See Class Plaintiffs*, 955 F.2d at 1276 (describing the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."). This principle is particularly true, where, as here, Plaintiffs' claims present "novel legal questions." *Tumampos v. Cathay Pac. Airways LTD.*, No. 16-CV-06208, 2018 WL 5603702, at *5 (N.D. Cal. Sept. 21, 2018). Litigation of Plaintiffs' claims would come with substantial risks involving certification issues, liability, prevailing at trial, and collecting any significant recovery.

### 3. *Plaintiffs Faced a Risk that the Court Would Deny Class Certification*

As noted above, Plaintiffs would have risked an adverse decision had this action proceeded to the class certification stage. Although Plaintiffs believe that this case is well-suited for resolution on a class-wide basis because it involves Alliant's uniform policy of denying Consumer

- 12 -

Credit Products to applicants solely on the basis of their alienage and/or immigration status, Alliant may have argued that individual issues predominate over questions that are common to the class, and that the ability to make exceptions to its uniform policy defeated commonality. Further, Alliant may argue that Class Members' claims cannot be tried collectively based on individualized differences in their applications to prevent a finding of predominance.

### 4. The Settlement Amount is Appropriate

"[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter*, 176 F.Supp.3d at 935 (internal quotation marks omitted). The settlement amount, as with any settlement, represents a compromise between receiving full damages and other relief on the one hand, and total defeat on the other. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justices v. Civil Serv. Com'n of City & Cty. of S.F.*, 668 F.2d 615, 624 (9th Cir. 1982) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971)). Given the risks and complexity of this litigation, and the cost savings obtained through settlement, the settlement amount is fair and adequate. The monetary and corrective action provides excellent value for Class Members.

California Class Members will receive $2,500 per denial, which amounts to over 60% of the $4,000 statutory damages available under the Unruh Act for each discriminatory act. *See* SA § 1(o); Cal. Civil Code § 52(a). This is an excellent result for California Class Members. In light of the risks of an adverse judgement on the merits, class certification or appeal, even lesser payments would provide an excellent value to California Class Members.

National Class Members will receive $250 per denial, which constitutes an excellent recovery considering the challenges inherent in establishing Section 1981 liability. *See* SA § 1(o).

- 13 -

1   Given the risks on class certification and the merits, even lower payments would constitute an

2   excellent recovery for National Class Members.

3       The Settlement provides Class Members with a substantial portion of their maximum

4   possible recovery, along with Corrective Action that effectively eliminates the harm that Plaintiffs

5   alleged.  The financial compensation to Class Members of a substantial portion of the potential

6   recovery at trial constitutes an exceptional result that supports approving the Settlement.  *See*

7   *Betancourt*, 2016 WL 344532, at *5 (granting final approval of settlement providing

8   approximately 9.7% of total maximum potential recovery if class members had prevailed on all

9   claims); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540, 2015 WL 3776765, at *4

10  (N.D. Cal. June 17, 2015) (finding that a settlement constituting 7.3% of plaintiff's estimated trial

11  award to be "within the range of reasonableness") (quoting *Ma v. Covidien Holding, Inc.*, No. 12-

12  02161, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014)).

13      Plaintiffs also obtained the maximum degree of Corrective Action that Class Members

14  could possibly obtain, which entirely eliminates the harm Plaintiffs alleged.  Alliant has agreed to

15  change its underwriting policy and no longer deny applicants Consumer Credit Products solely on

16  the basis of their immigration or residency status.  Immigrants nationwide – not just Class

17  Members – will potentially benefit from this Corrective Action, enabling hundreds of individuals

18  to apply for Consumer Credit Products with Alliant.  The Settlement represents an excellent result,

19  as even "a cash settlement amounting to only a fraction of the potential recovery will not per se

20  render the settlement inadequate or unfair […] where monetary relief is but one form of the relief

21  requested by the plaintiffs."  *Officers for Justice*, 688 F.2d at 628.  Accordingly, the Settlement

22  amount and corrective action strongly favors granting final approval.

23  ///

24  ///

25

26

27

28                                              - 14 -

### 5. *The Extent of Discovery Supports Settlement*

A settlement requires adequate discovery. The touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery. *In re Mego*, 213 F.3d at 459 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, Plaintiffs have pursued these claims diligently for several months, conducting informal and confirmatory discovery, as well as offers and counter-offers. The proceedings reached a stage where Plaintiffs and Class Counsel could make an intelligent evaluation of the litigation risks and benefits of settlement. Therefore, the settlement results from Class Counsel's informed judgment about the strengths and weaknesses of the claims.

### 6. *Class Counsel's Experience and Views Support Approval*

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See DIRECTV*, 221 F.R.D. at 528 (citation and internal quotation marks omitted). "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

Here, Class Counsel endorse the Settlement as fair, adequate, and reasonable. Class Counsel is experienced and capable of handling complex federal civil ligation, with extensive experience in prosecuting and litigating civil rights actions. Saenz Decl. ¶ 4; Lozada Decl. ¶ 7.

- 15 -

Based on their experience and weighing all of the above factors, Class Counsel concluded that the settlement is a favorable result that is in the best interest of Class Members.

### 7. Class Members Have Reacted Positively to the Settlement

Class Members in this case have reacted very positively to the Settlement. Alliant identified 95 Class Members. *See* RG2 Decl. ¶ 5. Alliant then sent a Settlement Class List consisting of 95 individuals to RG2. *Id.* After conducting a skip-trace, none of the Notices have remain undeliverable. *Id.* at. ¶ 8.

No Class Members have opted-out of the Settlement, and none have objected to any part of the Settlement, including the overall monetary relief achieved and the amounts allocated to attorneys' fees and costs, and service award. RG2 Decl. ¶¶ 12–13. The lack of objections and opt-outs is a strong positive reaction, favoring a finding that the Settlement is fair and should be approved. *See DIRECTV*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). "Settlement is the offspring of compromise; the question [courts] address is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Here, "the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Id.* Accordingly, the Court should grant final approval.

### 8. The Requirements for Approval under Rule 23(e)(2) Are Met

As noted above, Rule 23(e)(2) specifies several requirements for approval of a class action settlement. Each of these requirements is met here:

First, Class Representatives and Class Counsel must have adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A). As set forth in greater detail in the Unopposed Motion for Preliminary

- 16 -

Approval and Unopposed Motion for Fees and Costs, this requirement has been met. *See* Dkts. 56, 66. Class Representatives have the same interests as other Class Members, and has devoted significant time advocating on behalf of the Class. *See* Dkt. 66 (motion for fees). As noted above, Class Counsel are highly experienced and well-regarded in the field of class action civil rights litigation. *See* Lozada Decl. ¶¶ 2, 7; *see also Lopez-Valenzuela v. Maricopa County*, No. 08-cv-00660, 2015 WL 12811366, at *3 (D. Ariz. June 25, 2015) (noting MALDEF's "special expertise and experience in the areas of civil rights and immigration law.").

Second, the Settlement was negotiated at arms-length. Fed. R. Civ. P. 23(e)(2)(B). A settlement reached "in good faith after a well-informed arms-length negotiation" is presumed to be fair. *Fernandez v. Victoria Secret Store*, LLC, No. 06-cv-04149, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008); *In re Lorazepam*, 205 F.R.D. 369, 375–76 (D.D.C. 2002) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations.") (internal quotation marks omitted). After the Parties reached an agreement in principle, the Parties continued discussions to finalize the Settlement Agreement. Lozada Decl. ¶ 20. Significantly, the Parties did not negotiate attorneys' fees and costs. *See id.* The Parties continued in settlement discussions to finalize details regarding the Settlement Agreement, including the source of funds for payments to Class Members and administration costs to effectuate the Settlement. *See id.* Defendant eventually agreed to pay all costs, including attorneys' fees and costs, separate from the Settlement Fund. *See id.* This is precisely the type of "an arms-length, non-collusive, negotiated resolution" in which Ninth Circuit courts place "a good deal of stock." *Rodriguez*, 563 F.3d at 965; *see also Bert v. AK Steel Corp.*, No. 12-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[P]articipation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties."). The Settlement Agreement is the result of arms-length

- 17 -

negotiations between experienced Class Counsel and counsel for Alliant.  There is nothing in the negotiations or the substance of the Settlement Agreement to doubt its fairness.

Third, as discussed in greater detail above, the relief provided by the Settlement is adequate, particularly considering the untested nature of Plaintiffs' claims.  Fed. R. Civ. P. 23(e)(2)(C).  Settlement checks will be distributed to Class Members without submitting a claim, or taking any action Claim Forms, within 10 days of the Effective Date, and Class Members will have 120 days from the date of issuance to cash their checks.  SA §§ 1(x); 10.  Attorneys' fees and costs, as awarded by the Court, will be paid to the Settlement Administrator 10 days after the Effective Date, to be distributed to Class Counsel in accordance with the Settlement Agreement. *Id.* at § 10(c).

Fourth, the Settlement treats similarly-situated Class Members the same.  All California Class Members will receive $2,500 per denied application.  SA § 10(o).  All National Class Members will receive $250 per denied application.  *Id.*  As described above, the difference in award amounts between the California Class and the National Class is justified by the difference in possible financial recovery for claims brought under the Unruh Act and claims brought under Section 1981.

## IV.     CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' Unopposed Motion for Preliminary Approval and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Costs, and Service Awards, Plaintiff respectfully requests that the Court grant Final Approval of the Settlement, grant final certification of the Class, designate Plaintiffs Camacho and Soto Lopez as Class Representatives, and confirm MALDEF as Class Counsel.

- 18 -

Dated: July 5, 2024                Respectfully submitted,

*/s/ Luis L. Lozada*
Luis L. Lozada
Thomas A. Saenz
**MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND**

*Attorneys for Plaintiffs
and the Proposed Class*

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**          CASE NO. 5:22-cv-01690-BLF